The next case today is United States v. Jorge Miranda-Carmona, appeal number 19-1622. Attorney Novas, please introduce yourself for the record and proceed with your argument. Yes, good morning. My name is Jose Luis Novas and I represent Jorge Miranda-Carmona, the appellant in this case. This case presents a question whether the sentence imposed by the district court is a procedural standpoint. To be specific, whether the district court's calculation of Mr. Miranda-Carmona's criminal history rested on a plausible sentencing rationale when it counted separately two prior sentences imposed by the state court on the same day. That determination depended in assessing whether or not the sentences were for two offenses that were or were not separated by an intervening arrest as provided by section 481.2 of the sentencing guidelines. The only evidence on the record that sheds light about whether such an arrest occurred or not was a charging document, rather a de-charging document, which related to the first of the two offenses in question. That charging document... Counsel, isn't the record clear that when your client wrote the letter to his partner who had the benefit of a kind of protection from abuse order, I mean, he was at the Bayamon prison facility. He was in custody. That's correct. As a result of the first domestic violence incident. And so the government says, ignoring for a moment waiver and forfeiture issues, which they raised as well, that, I mean, you know, he was in custody. And that on any, I mean, that's on any reasonable view, that's certainly comparable to an arrest. So why don't we have an intervening, to use the term of the guidelines, between the first domestic violence incident and the second one? And if that's so, then the court was correct to treat them as separate, separate convictions. I understand the question, Your Honor. So what the record shows as facts, Your Honor, and that's where I can see the court's doubt about this. It's undisputed for the pre-sentence report fact finding, which is not contested by either party, that upon Mr. Miranda Carmona's initial arrest, he was, first of all, he was brought to court without an arrest warrant. And second, he was released on an $18,000 bond. Now, that's what the PSR states as to the circumstances surrounding that first incident. It is a fact, though, that at some point, he, Mr. Miranda Carmona, becomes incarcerated in Bayamón, and that we go back to the initial question, which is really what, upon what the whole thing hinges, and it's whether or not a custodial formal arrest took place the first time around. And that's, the record shows, the record is not clear as to that, Your Honor. And that's why our argument is that the court's rationale for counting those two offenses separately does not... Counselor, are you saying the record is not unclear that he was in that... And that initial brush with the law, how Mr. Carmona got to court, was really not clearly, I mean, at least there's a dispute as to that. And so that's a situation with the intervening arrest. It was not shown that clear. So, counsel for Mr. Miranda objected twice to the conclusion that he had been arrested. She argued very clearly on the record that for purposes of the Section 481.2 of the guidelines, an arrest is formal custodial arrest, and that that had not taken place. Now, at sentencing, for reasons not clear from the record, Mr. Miranda's counsel focused on his subsequent intervention, arguing that as to the second offense, when he was brought to court, he was not arrested as he was already in prison. And that was really not relevant because the important thing to determine whether the defendant had been arrested or not. Now, so in the formal written objection, the counsel had directly focused on whether an intervening arrest had taken place regarding the first offense. She did not address this at sentencing. And the court, what happened there was the court focused on the circumstances surrounding the subsequent offense to weigh whether an arrest is possible when somebody is incarcerated or not. Now, the probation officer was at the end of the sentencing hearing heard on the matter and she correctly refocused the matter back to the circumstances surrounding Mr. Miranda's offense, but merely offering that because the charging document showed that Mr. Miranda had been provided Miranda warnings, he must have been in custody. And to us or to the defense, that is insufficient because the issuance of Miranda warnings, though they tend to suggest there may have been a custodial situation and not necessarily mean that that was how the situation at that time and much less does it show how Mr. Miranda came to court. Attorney Novus? Of course, attorney Novus sentenced according to correctly calculated guidelines with a sufficient plausible explanation that Mr. Novus to support the court's finding. We believe that in this case that did not occur. The lapse on the required explanation as to whether there was an intervening arrest or not, it's even more notable because on the merits, everything pointed that Mr. Miranda's offenses were related one to the other. And obviously, the purpose of assessing a defendant's criminal history score is to correlate the punishment with his past criminal conduct. And the purpose of the intervening arrest rule is to punish a defendant who, after an intervention from law enforcement, continues to commit offenses. Mr. Novus? It's been held before by the courts that an offender who has been arrested between his first and second offenses has perhaps demonstrated more than one who has no intervening arrest, that he is unlikely to mend his ways. So it used to be that prior iterations of the guidelines had as an element to make this determination whether there was a discernible connection between the two offenses, whether there were common antecedents, whether there was a second offense. Both offenses were part of a single common scheme or plan. That, of course, is no longer the case with the actual guidelines that just basically call into question if there's no intervening arrest, then what we have to look at is whether the sentences were imposed on the same day or not. And there's really no discussion anymore about relatedness. But on the merits, I mean, we believe it has some bearing because these were related. Both were related offenses. The letter writing violated the restraining order. Judge, would it make sense to remove him from the meeting since I don't believe he can hear us? That's our... Apparently he can't see or hear us. We believe that procedure... He can't see or hear us. ...on firm sentencing is not at all clear whether that intervening arrest... Dan, do you have his number? ...or not. Mr. Novus, apparently you could not hear or see us while you were talking. So I think there was a question or two. I had had one for you. We did hear you. I'm sorry. So, as I, in reading through the transcript, page 78 of the appendix, Defense Counsel is arguing below that on December 16, 2012, Miranda Carmona is arrested. He's taken to Bayou Mon where he is in custody. And then he proceeds to argue that it's the later event that there's no arrest at. So what are we to make of that? That's exactly what happened, Your Honor. I don't understand why Defense Counsel changed tacks during the sentencing hearing because the fact remained that the PSRs in the case, what they reflected as a fact was that in December... But what's a judge to do when he's told there was the first arrest for the first event, but I'm claiming there was no arrest at a second. And the judge then... That's a hugely problematic thing for the defense, Your Honor, because obviously at that time, counsel for Mr. Carmona was not, did not focus the argument on the, on what was crucial. Now, what we offer is that at the end of the sentencing hearing, the probation officer brought things into clear focus and she, it's on the record, she focused on the first, on the first offense and the circumstances surrounding how it is, whether there was an arrest or not. And what she offered was that because he was Mirandanized, it followed that that first instance, he was in custody. Therefore, he had been arrested. Well, how did he get in the prison in Bayamón to write the letter if he wasn't arrested? Well, he obviously ended up in prison, Your Honor. That's incongruous, though. I mean, when he ended up in prison is what's not clear to us because the PSRs reflect that as to the first incident, he was granted bail and he was released on bail. And we did, I know that counsel for Mr. Carmona at sentencing stated that he went to jail immediately thereafter. And he was in prison where he wrote it. So don't we just assume that he didn't make the bail? That's, that's, that's what, that's what can be, that's, that's what, what can be gleaned from everything. That's the incongruity, though, between the factual determinations in the PSR, the incongruity between the charging document of the initial offense, which also indicates that bail was set. Counsel, what is it you please distill the essence of your argument? I'm a little confused as to what it seems. I gather, maybe I should try to state it for you. You can tell me what's wrong. The essence seems to be that when he appeared in December before the court to answer for that first domestic violence charge, it appears that he had not been arrested, that in some fashion, he just was told he had to be there and he showed up. And so since he wasn't arrested, what happens afterwards when he apparently can't make bail and go to jail, none of that matters because there's some uncertainty about whether he was arrested when he first showed up in court. Is that, is that the essence of your argument? The essence of the argument, Your Honor, is that it's unclear how it is that whether Mr. Miranda Carmona was summoned, cited or downright arrested and taken to court in connection to the first offense. Thank you, counsel, your time's up, unless there are any other questions. No, thank you. Thank you, Attorney Novus. If you could mute your camera and mute your audio at this time. And Attorney Bornstein, if you could please unmute your audio and video. And introduce yourself on the record, please. Good morning, Judge Keada. My name is David Bornstein and I'm representing the United States. Good morning. You may go ahead. May it please the court. This court should affirm the sentence below for three main reasons. First, Mr. Miranda conceded to the district court that he was arrested after his first domestic violence offense and before he committed his second one. Judge Keada, as you pointed out, that concession occurs on pages 78 and 79 of the appendix. Second, Mr. Miranda may not complain that the district court focused on whether he was arrested in relation to a second offense because he himself directed the court to that issue as a relevant one. And third, where I'd like to spend most of my time is on the merits. The record plainly supports the finding that Mr. Miranda had an intervening arrest between his first and second offenses. First, as I already noted, he conceded that fact to the district court, which was entitled to rely on it. Second, if you look at the judgment of conviction that was entered on his first defense in June 2013, he was credited for time served back until December 16th, 2012, which was not only the date of his first offense. Yes, Judge Barron. Yeah, I have just a question about how we're supposed to think about waiver in this context. So there's records and they exist that show what happened and they either are unclear or they're clear. And then there's a characterization of the custody that occurred. As I understand your opponent's suggestion is that the mere fact that he's in custody doesn't show that there was an arrest within the meaning of the guidelines, because that's a particular term. So I guess I'm just wondering whether the characterization of something as an arrest, the worry might be that's colloquial and that the thing that should guide us is simply what the records show, which would be consistent with your focus on the merits. So I guess I'm just wondering whether the characterization of the custody as arrest really could be a concession when there just is a record saying what it says about why he's in custody, if he's indeterminate, whether he might have been there just based on summons. I'm not sure that the fact that counsel characterized it as an arrest should be dispositive. That would not address the invited error question about focusing on the second arrest, but it would seem to raise a concern about relying on waiver as to the first, if you could just address that point. Yes, Your Honor. We think that Mr. Miranda waived the issue twice below. Number one, there was the fact that if you look at the first sentencing transcript, which is the May 2nd, 2019 proceeding, he started out by saying that he was not arrested with respect to the first offense. But once we had filed the paperwork from the state court proceedings at the May 29th sentencing proceeding, Mr. Miranda changed tack. He then admitted that he was arrested after his first offense and that he was in custody when he committed the second offense. We believe that because he correctly identified the issue of whether or not he was arrested in relation to his first offense, and then he abandoned that argument and he actually conceded that he was arrested. That is clear waiver. But second, Your Honor, it is undisputed that Mr. Miranda committed his second offense while in custody. And as this court noted in United States versus Kelly, which is a 2011 case of yours, it can be found at 661 F. Third 682 being arrested is simply when you're taken into when you're taken into custody. And because it is undisputed that Mr. Miranda was taken into custody with respect to his first offense after committing it and before committing the second one, there was an intervening arrest. And as I was stating earlier, Your Honor, the district court had a clear basis for finding irrespective of his concession that Mr. Miranda was arrested for the simple fact that he was credited for time served in custody dating back to December 16th, 2012, which was not only the date of his offense, but the date of the probable cause hearing where probable cause was found for that for that prosecution to move forward. And under Rule 182 of the Puerto Rico Rules of Criminal Procedure, the district court in sorry, I should say the sentencing court in Puerto Rico was entitled to do that if Mr. Miranda had been held in custody with respect to that first offense dating back to December 16th, 2012. Now, my brother at the bar argued that that his client, Mr. Miranda, was released on bail after his first arrest, or I should say was released on bail after the probable cause hearing on December 16th, 2012. But there really is no basis for that idea. It comes from the PSR, but the PSR was simply reflecting what the probation officer found in the record of the state court documents. And at the end of the May 2nd, the first sentencing hearing, the district court ordered probation to turn those documents over to the government so that we could provide an English language translation of them. And we submitted in docket entry 93, those English language translations, and they're provided in the appendix. And if you look at appendix page 66, which is the relevant page here, it clearly states simply that Mr. Miranda was provided the opportunity of bail, that bail was set in the amount of $18,000, but it does not state that Mr. Miranda actually made bail. And so I believe that inference that he made bail is contradicted by the record, again, because he's credited for time served dating back to December 16th, 2012, showing that he had been kept in custody from that time forward. And and for those reasons, your honor, we believe that it is simply clear that the district court denied erred, the court was entitled to rely upon the concession, the concession was fully correct. If if all that Mr. Miranda meant was I was arrested, was that I was brought into custody with respect to the first charge again, looking at U.S. versus Kelly, that is precisely what an arrest is. And all that Kelly was doing was quoting Black's Law Dictionary. And in any event, I'd point out, your honor, that Mr. Miranda does not actually contest on appeal that he was arrested with respect to his first offense. He simply argues that the district court erred in focusing on his second offense. But again, that was invited error because he himself made that the focus of his objection. And there could have been no error in denying that objection, because as he himself states on appeal, his objection was irrelevant. Now, if there are no further questions from the panel, the United States would ask that you affirm the district court sentence for the reasons we provided. Thank you, Mr. Bernstein. Thank you, your honor. Thank you. That concludes argument in this case. Attorney Novus and Attorney Bernstein, you should disconnect from the hearing at this time.